Matthew C. Wolf (SBN 223051)
Lauren VanDenburg (SBN 299957)
Bryan D. Roth (SBN 299906)
TURNER HENNINGSEN WOLF & VANDENBURG, LLP
707 Wilshire Boulevard, Suite 3700
Los Angeles, California 90017
Tel: 323-653-3900
Fax: 323-653-3021
mwolf@thwvlaw.com; lvandenburg@thwvlaw.com;
broth@thwvlaw.com

Attorneys for Defendants
SESTERCE FRANCE LABS SAS, and SESTERCE GROUP
SAS

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TOGETHER AI, INC., d/b/a TOGETHER COMPUTER, INC., a Delaware corporation,<br>Plaintiff,<br><br>v.<br><br>SESTERCE FRANCE LABS SAS, a French corporation, and SESTERCE GROUP SAS, a French corporation,<br>Defendants. | Case No.: 4:25-cv-04687<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT UNDER FRCP RULES 12(b)(6); 12(b)(2); MOTION TO STRIKE REQUEST FOR PUNITIVE DAMAGES AND ATTORNEY'S FEES UNDER FRCP RULE 12(f); MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date: December 11, 2025<br>Time: 2:00 p.m.<br>Dept.: Courtroom 6<br><br>Judge: Hon. Jon S. Tigar |

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on December 11, 2025, at 2:00 p.m., or as soon thereafter as the matter may be heard in Courtroom 6 of the above-entitled Court, Defendants Sesterce France Labs SAS and Sesterce Group SAS, will, and hereby do, move this Court for an order 1) dismissing Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6) and 12(b)(2) and 2) striking Plaintiff's request for punitive damages at Compl., page 20, lines 8-9 and request for attorney's fees at Compl., page 20, line 5, under FRCP 12(b)(6) or alternatively, FRCP 12(f).

This motion is based on the grounds that (1) the Complaint fails to state a claim against Defendants who are not parties to the contract at issue—and over whom the Court therefore lacks personal jurisdiction; (2) Plaintiff is not entitled, as a matter of law, to punitive damages for alleged breach of contract or breach of the implied covenant of good faith and fair dealing; and (3) Plaintiff is not entitled to attorney's fees as it cites to no prevailing party attorney's fee provision in the operative contract it sues under.

This motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the concurrently filed Request for Judicial Notice and all pleadings and papers on file in this action, and any further evidence and argument presented at or before the hearing.

Dated: October 6, 2025          TURNER HENNINGSEN WOLF & VANDENBURG, LLP


                                By:  /s/ Matthew Wolf
                                     Matthew Wolf

                                Attorneys for Defendants
                                SESTERCE FRANCE LABS SAS, and SESTERCE
                                GROUP SAS

## TABLE OF CONTENTS

I.      **INTRODUCTION** ............................................................................ 3

II.     **FACTS HELPFUL FOR THE COURT IN DECIDING THIS MOTION** ............. 5

      A.     **The Parties** ............................................................................ 5

      B.     **Relevant Facts as Presented by Plaintiff's Complaint** .................................. 6

      C.     **Plaintiff's Complaint Conceals the Complete Contract Transaction** ........... 7

III.    **LEGAL ARGUMENT** ....................................................................... 9

      A.     **Legal Standard for Rule 12(b)(6) and 12(f) Motions** .................................... 9

      B.     **Judicial Notice of the Docusign Certificates and the September 19 Agreement Is Proper Under Incorporation by Reference** ...................... 10

      C.     **Plaintiff's Breach of Contract Claim Fails Against the Named Defendants** ........................................................................... 11

           1.     **Sesterce France Are Not Parties to Any Agreement with Plaintiff** .......................................................................... 11

           2.     **The Court Lacks Personal Jurisdiction Over Sesterce France** ............................................................................ 14

      D.     **Plaintiff's Breach of the Implied Covenant of Good Faith and Fair Dealing Claim Fails Against the Named Defendants** ...................... 14

      E.     **Leave to Amend Should Be Denied** ............................................... 16

      F.     **Plaintiff Is Not Entitled to Punitive Damages or Prevailing Attorney's Fees** ....................................................................... 17

IV.    **CONCLUSION** ............................................................................. 18

1

## TABLE OF AUTHORITIES

2

### Cases

3  *19 Tao Vega LLC v. Holo Ltd., 2019 WL 960773* ........................................................................ 11

4  *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 245 (1975)* ................................ 17

5  *Amba Marketing Sys., Inc. v. Jobar Int'l, Inc*., 551 F.2d 784, 787 (9th Cir. 1977) ................... 14

6  *Applied Equip. Corp. v. Litton Saudi Arabia Ltd*., 7 Cal. 4th 503, 514 (1994) ......................... 11

7  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ............................................................................... 9

8  *Avidity Partners LLC, supra,* 221 Cal. App. 4th 1180 at 1204 ................................................... 16

9  *Beluca Ventures LLC v. Einride Aktiebolag*, 2022 WL 17252589, at *5 (N.D. Cal. 2022) ....... 17

10  *Boland, Inc. v. Rolf C. Hagen (USA) Corp*., 685 F. Supp. 2d 1094, 1101 (E.D. Cal. 2010) ...... 11

11  *Bureerong v. Uvawas*, 922 F. Supp. 1450, 1479 n.34 (C.D. Cal. 1996) ...................................... 11

12  *Chung v. Intellectsoft Grp. Corp., 2023 WL 5615456, at *2 (N.D. Cal. Aug. 30, 2023) (citing United*

13       *States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003).)* .................................................... 10

14  *City of Hope Nat'l Med. Ctr. v. Genentech, Inc.* (2008) 43 Cal. 4th 375, 392 ........................... 17

15  *Clemens v. Am. Warranty Corp.* (1987) 193 Cal. App. 3d 444, 452 .......................................... 11

16  *Colony Cove Props., LLC v. City Of Carson*, 640 F.3d 948, 957 (9th Cir. 2011) ...................... 9

17  *F.B.T. Prods., LLC v. Aftermath Records*, 827 F. Supp. 2d 1092, 1104 (C.D. Cal. 2011) ......... 13

18  *Five Star Gourmet Foods, Inc. v. Fresh Express, Inc*., 2020 WL 513287, at *1 (N.D. Cal. Jan. 31,

19       2020) ................................................................................................................................ 12

20  *Gabrielli v. Motorola Mobility LLC*, 2025 WL 1939957, at *13 (N.D. Cal. July 14, 2025) ...... 16

21  *Goel v. Coalition Am. Holding Co. Inc*., WL 13128300, at *9 (C.D. Cal. 2011) ....................... 17

22  *Holland v. Morse Diesel Intern., Inc.* (2001) 86 Cal.App.4th 1443, 1446 ................................. 10

23  *Jones v. AIG Risk Mgmt., Inc., 726 F. Supp. 2d 1049, 1054–55 (N.D. Cal. 2010)* .................... 12

24  *Kentwool Co. v. NetSuite Inc*, 2015 WL 693552, at *2 (N.D. Cal. Feb. 18, 2015) ................... 10

25  *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005) ............................................................. 9

26  *Ledet v. California Waste Sols., Inc*., 2013 WL 1120786, at *6 (N.D. Cal. Mar. 18, 2013) ...... 15

27  *Love v. Fire Ins. Exch*., 221 Cal. App. 3d 1136, 1153 (1990) ................................................... 15

28  *Lucas v. Dep't of Corrections, 66 F.3d 245, 248 (9th Cir.1995)* .............................................. 16

*Lyman v. Saxon Mortg. Servs., Inc.*, 2013 WL 12173600, at *2 (N.D. Cal. May 30, 2013) ...... 16

*Matter of Sparkman, 703 F.2d 1097, 1099 (9th Cir. 1983)* ....................................... 17

*Mead v. Sanwa Bank California* (1998) 61 Cal.App.4th 561, 567-568 ................................. 10

*Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008)* ..................... 10

*Monster Film Ltd. v. Galloping Illusions Pty Ltd*., 2016 WL 10999320, at *4 (C.D. Cal. Sept. 23, 2016)................................................................................................. 12

*Olson v. Arnett* (1980) 113 Cal. App. 3d 59, 67 ....................................................... 17

*Racine & Laramie, Ltd. v. Dep't of Parks & Recreation*, 11 Cal. App. 4th 1026, 1031 (1992) . *passim*

*Rosal v. First Fed. Bank of Cal*., 671 F. Supp. 2d 1111, 1129 (N.D. Cal. 2009) ..................... 15

*Schwarzenegger v. Fred Martin Motor Co*., 374 F.3d 797, 800 (9th Cir. 2004) ....................... 14

*SDI Labs, Inc. v. Sameday Techs., Inc*. 2025 WL 1141165 ............................................. 11

*Sessions v. Chrysler Corporation* (9th Cir.1975) 517 F.2d 759, 760 ................................. 11

*Shelton v. Ocwen Loan Servicing, LLC*, 2019 WL 4747669, at *15 (S.D. Cal. Sept. 30, 2019) ........................................................................... 12

*Spinks v. Equity Residential Briarwood Apartments* (2009) 171 Cal. App. 4th 1004, 1054 ) .... 17

St. *Vincent Med. Ctr. v. Mega Life & Health Ins. Co*., 585 F. App'x 417, 418 (9th Cir. 2014).. 11

*Sun Hong Foods, Inc. v. Future Best Trading Inc., 2023 WL 11197084, at *3 (C.D. Cal. Sept. 29, 2023)*................................................................................................. 11

*Sun v. Cheung*, 2025 WL 1446378, at *4 (E.D. Cal. May 20, 2025)..................................... 12

*Van Buskirk v. Cable News Network, Inc*., 284 F.3d 977, 980 (9th Cir. 2002) (*citing In re Silicon Graphics Inc. Sec. Litig*., 183 F.3d 970, 986 (9th Cir.1999)........................................... 10

*Williams v. Resler*, 2018 WL 4063518, at *3 (S.D. Cal. Aug. 24, 2018) ................................ 9

*Yahoo! Inc. Customer Data Sec. Breach Litig*., 313 F. Supp. 3d 1113, 1149 (N.D. Cal. 2018). 17

*Zixiang Li v. Kerry, 710 F.3d 995, 999 (9th Cir. 2013)*............................................... 16

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

This Motion to Dismiss raises a fundamental contract principle: only the parties who actually agreed to a contract may be held liable for its breach. Plaintiff Together AI, Inc. ("Together" or "Plaintiff") nevertheless seeks to hold Defendants—who are nowhere named in the operative agreements—responsible for obligations they never undertook. The subscription service order form at issue designates Sesterce U.S., Inc. as the "Customer," and Plaintiff never asked for, nor obtained, the addition of the named Defendants as parties. Put simply, the Complaint targets the wrong entities. Rule 12(b)(6) exists to prevent precisely this kind of claim: one asserted against parties who, as a matter of law, were never bound by the contract.

The facts relevant to this Motion to Dismiss are simple and undisputed.  On September 18, 2024, the parties' broker, Hydra Host, Inc. ("Hydra") circulated a draft document which it had prepared entitled "subscription service – order form" (the "September 18 Agreement") that mistakenly listed the Customer as "Sesterse," which is not an entity and has no connection to the Defendants. Before execution, the error was corrected to identify the proper customer, Sesterce U.S., Inc. ("Sesterce US"), with the correct U.S. address, and the parties signed the corrected document through Docusign. The following day, on September 19, 2024, at Plaintiff's request, the parties executed a superseding agreement (the "September 19 Agreement"), which corrected the contract term from 304 days to 365 days and confirmed Sesterce US as the intended Customer to be bound.

Plaintiff, perhaps anticipating the legal flaws in its Complaint, attempts to plead around the documentary record by claiming that Defendants "doctored" a fully the agreement. However, Plaintiff has not provided a signed version of the unchanged September 18 Agreement that Defendants purportedly "doctored." If Defendants altered the agreement after the signing as Plaintiff alleged, surely an unaltered and signed version of the September 18 Agreement would be in Plaintiff's possession. Thus, on the face of the Complaint, the only signed version of the September 18 Agreement is that in which Sesterce US is listed as the customer. Further, Plaintiff's allegation of doctoring is demonstrably false through the Docusign Certificate, which this Court can consider because the September 18 Agreement is incorporated by reference to the Complaint. The Docusign

Certificate confirms the sequence of execution and time stamps for all parties, which shows that Plaintiff signed after Sesterce US and the alleged "doctoring." Moreover, this allegation of doctoring is belied by the September 19 Agreement, which clearly lists Sesterce US and is also incorporated by reference in the Complaint, as its terms are referenced in Plaintiff's damages allegations.

It is striking, indeed bordering on bad faith, that Plaintiff has omitted two critical pieces of the transactional record from its Complaint—both of which are attached here and properly considered by this Court under the incorporation by reference doctrine. First, Plaintiff omits the Docusign Certificate, clearly part of the September 18 Agreement, which shows when the parties opened, reviewed, and executed, and confirms that no revisions were made surreptitiously. Second, and more suspiciously, Plaintiff entirely leaves out the subsequent, superseding September 19 Agreement, fully executed by all parties just one day after the first, at Plaintiff's own request. This omission is highly unusual, but its purpose is clear: the superseding September 19 Agreement unambiguously lists Sesterce US as the "Customer", with the correct U.S. address, contains no superimpositions, and reflects no ambiguity that Plaintiff could plausibly rely upon.

Of particular concern is Plaintiff's apparent strategy of cherry-picking portions of the Agreements to suit its narrative while withholding the full transactional context from the Court. For example, Plaintiff cites snippets of the September 18 Agreement to suggest that Sesterce's representatives somehow altered the Customer name after execution, yet conspicuously omits the September 19, superseding Agreement, which unambiguously identifies Sesterce US as the Customer. Plaintiff also hides the existence of the September 19 Agreement in the narrative of the Complaint yet relies on it to calculate damages based on the longer contract term it reflects. This selective use of the record demonstrates that Plaintiff was fully aware of both Agreements, knew the proper contracting party, and never objected at the time. Yet now, nearly a year later, Plaintiff attempts to mislead the Court into believing its claims involve the French entities.

In short, Plaintiff knowingly executed two versions of the Agreement listing Sesterce US and not Defendants as the counterparties, never objected to the parties named therein, and now seeks to manufacture liability against non-signatory French entities. Plaintiff's selective presentation of the record, reliance on cherry-picked contract terms, and omission of the superseding Agreement

1  cannot overcome the plain language of the Agreements and the unambiguous Docusign Certificate.

2  The claims against the wrongly named Defendants should be dismissed.

3       Finally, Plaintiff's demands for punitive damages (Compl. at p. 20) and attorney's fees (*id.*)

4  should be stricken. This case is a straightforward contract dispute, and punitive damages are

5  categorically unavailable for breach of contract. Plaintiff's duplicative "implied covenant" claim

6  fares no better and cannot support punitive damages. Nor does Plaintiff identify any contractual

7  basis entitling it to attorney's fees. These remedies therefore fail as a matter of law.

8  **II.  FACTS HELPFUL FOR THE COURT IN DECIDING THIS MOTION**

9      **A.  The Parties**

10       Plaintiff Together AI, Inc., d/b/a Together Computer, Inc. ("Plaintiff"), is a Delaware

11  corporation headquartered in San Francisco, California. Plaintiff provides a cloud platform, Forge,

12  that enables researchers, developers, and businesses to build, train, and deploy generative AI

13  models. See Compl. ¶¶ 9-10. Plaintiff is listed as the "Vendor" on the "Subscription Service – Order

14  Form" prepared by third-party broker Hydra Host, Inc. Compl., Ex. A at 1.

15       Sesterce is a multinational enterprise with a clear and well-organized corporate structure. Its

16  ultimate holding company, Sesterce Group, is based in France and directs the company's global

17  strategy in high-performance computing (HPC) and AI cloud services. The original French

18  operating entity, Sesterce SAS, leads the company's technical innovations, including deployment

19  of supercomputers powered by advanced NVIDIA GPUs, which have made Sesterce a leading AI

20  cloud provider in Europe. Notably, neither Defendant Sesterce France Labs SAS nor Defendant

21  Sesterce Group SAS are identified as the "Customer" on either of the order forms that were fully

22  executed.  To support its operations and growth in the United States, Sesterce established Sesterce

23  US, a duly incorporated American subsidiary. Sesterce US is the entity listed as the "Customer" in

24  both the original and the superseding fully executed order forms. Sesterce US is not a nominal entity;

25  it serves as the company's operational arm in the U.S., responsible for executing contracts with

26  American counterparties and expanding Sesterce's AI services and GPU-powered cloud offerings

27  in North America. Its use as the contracting party aligns with standard practice for U.S. commercial

28  relationships, where counterparties often prefer a domestic entity for enforcement and operational

1  clarity. Sesterce US is well capitalized, actively engaged in numerous commercial transactions, and

2  fully capable of fulfilling its contractual obligations.

3  **B.    Relevant Facts as Presented By Plaintiff's Complaint**

4  In August 2024, Sesterce, through its broker Hydra Host, entered negotiations with Plaintiff

5  to access the Together Forge cloud platform, which provides GPU clusters for AI model

6  development. Sesterce intended to use the platform to support its customer, Mistral AI, while

7  remaining responsible for payments under the Contract.  Compl., ¶¶ 2-4.

8  The parties' negotiations culminated in a draft agreement titled "Subscription Service –

9  Order Form" prepared on Hydra letterhead. Compl., Ex. A at 1. The Order Form contained two key

10  sections: "Customer/Broker Information" and "Vendor Information." *Id*. In the "Customer/Broker

11  Information" section, the name "Sesterse" was listed, along with a Marseille, France address. *Id*.

12  Notably, "Sesterse" is not the legal name of any company affiliated with Sesterce's ultimate holding

13  company or any other Sesterce entity. The Order Form further provided that it would be "effective

14  as of the date of the last party's signature" and "entered into among the ***customer listed above*** …

15  the Broker listed above … and Together Computer Inc." *Id*. (emphasis added). Despite repeatedly

16  using the defined term "Customer" throughout the September 18 Agreement, neither of the named

17  Defendants appear anywhere in the document. See generally Compl., Ex. A.

18  Plaintiff's own pleading demonstrates that the contract at issue was executed through Hydra,

19  the broker acting on Sesterce's behalf, and that at best the document signing process gave rise to

20  confusion about whether "Sesterse" (a company that does not exist) or Sesterce US (a company that

21  does exist) was to be the contracting party.  From the outset, Plaintiff acknowledged that

22  negotiations occurred through Hydra, not directly with any French entity. Compl., ¶¶ 20–21. Hydra,

23  not Sesterce, was the counterparty who exchanged specifications, pricing, and draft agreements with

24  Together. *Id*., ¶¶ 22–27, 29.  When the Agreement was finalized on or about September 19, 2024, it

25  was executed by Together's CEO, Hydra's CEO, and Sesterce's CEO.  *Id.* ¶ 36. Importantly,

26  Plaintiff admits that the contract language identified "Sesterse" as the "Customer" but alleges that

27  Hydra or Sesterce "superimposed" the name of Sesterce US into the document after Together's CEO

28  had already signed.  *Id*. ¶ 44.  Plaintiff concedes that this change corrected an earlier misspelling of

"Sesterce" and added the proper U.S. corporate address. *Id.*, ¶ 45. Plaintiff further acknowledges that Sesterce's CEO, Youssef El Manssouri, signed the agreement in his capacity as Sesterce's authorized representative. *Id.*, ¶ 46. While Together speculates that the reference to Sesterce US was an improper substitution, its own pleading admits that the U.S. subsidiary exists, that it is wholly owned, and that its name was expressly reflected in the executed contract. *Id.*, ¶ 47.

Critically, Plaintiff alleges it is owed $18,858,061 in damages. Compl., ¶ 82. Yet in calculating that amount, Plaintiff relies on the contract term set forth in the second, superseding September 19 Agreement—despite failing to mention that agreement anywhere in the Complaint. Had the September 18 Agreement been the operative contract, Plaintiff's damages calculation necessarily would have been based on its 304-day term, reducing the claimed amount by roughly $3 million. Cf. Compl., Ex. A at 4 with Compl. ¶¶ 78-79. By doing so, Plaintiff effectively concedes in its own pleading that the September 19 Agreement governs, and that agreement unambiguously identifies Sesterce U.S., Inc. as the sole contracting party.

Even crediting Plaintiff's allegation that the name "Sesterce US, Inc." was somehow "superimposed" on the September 18 draft, that assertion still does not establish that the named Defendants are proper parties to a breach of contract claim. Neither the September 18 Agreement nor the September 19 Agreement identifies the Defendants or any other French entity as the "Customer." The Complaint itself confirms that fact.

### C.     Plaintiff's Complaint Conceals the Complete Contract Transaction

The Court may consider the contract transaction on a motion to dismiss. Although Plaintiff attaches the September 18 Agreement, it omits two critical components of the transaction. First, the Complaint omits the Docusign audit certificate, which details when the agreement was sent, opened, reviewed, and signed by each of the three parties—Hydra, Plaintiff, and Sesterce U.S., Inc.—with official timestamps. See Request for Judicial Notice ("RJN"), Ex. A. As the audit shows:

- On September 18, 2024, Ryan Horjus of Hydra placed the draft agreement into Docusign at approximately 1:36 p.m.

- At 1:38 p.m., Sesterce's CEO, Youssef El Manssouri, received the document. At 2:38 p.m., he reviewed it. At 6:58 p.m., he executed the agreement on behalf of Sesterce U.S., Inc.

- Immediately thereafter, Aaron Ginn of Hydra received the document, opened it at 7:01 p.m., and signed it at 9:49 p.m.

- At 9:49 p.m., Plaintiff's CEO, Vipul Ved Prakash, received the executed agreement. At 10:56 p.m., he reviewed and executed it.

The audit certificate—an integral part of the contract—demonstrates that Sesterce U.S., Inc. executed the agreement first, Plaintiff knowingly signed the same agreement thereafter, and no changes were made following execution. See RJN, Ex. A.

Second, Plaintiff ignores a fully executed, superseding Agreement that expressly names Sesterce US, Inc. as the "Customer," without any alterations. See RJN, Ex. B. The superseding agreement arose at the request of Plaintiff's representative, Deveaux Barron, who asked Sesterce to execute a revised version of the September 18 Agreement to correct the contract term from 304 days to a full year. Compare Compl. ¶ 33 and Compl., Ex. A (304-day term) with RJN, Ex. B (365-day term). The September 19 Agreement unambiguously confirms that Sesterce U.S., Inc. is the Customer, leaving no question as to the contracting party:

| SUBSCRIPTION SERVICE – ORDER FORM | |
| --- | --- |
| **Customer/Broker Information** | **Vendor Information** |
| Name: Sesterce US Inc<br><br>Address: 300 Creek View Road Suite 209, Newark, DE 19711<br><br>Billing contact: youssef@sesterce.com<br><br>*AND*<br><br>Broker Name: Hydra Host, Inc, ("Hydra Host")<br><br>Address: 350 S. Miami Ave Ste. A Miami FL 33130<br><br>Billing contact: Scott@hydrahost.com | Name: Together Computer, Inc.<br>Address: 251 Rhode Island Street #205, San Francisco, CA 94103<br><br>Date: 9.11.24<br><br>Purchase Order Number: 145<br><br>Contract Start date: 9/13/2024 |

Accordingly, considering the complete contractual record that is incorporated by reference in the Complaint, Hydra was responsible for negotiating and preparing the agreements, as well as creating and managing the Docusign envelopes. Hydra sent the documents for execution; Sesterce

never had possession of the actual document file and therefore could not edit or alter it. The only revision to the initial contract—correcting the misspelling of "Sesterce"—was made by Hydra in response to an error flagged by Sesterce. Thus, Plaintiff's allegation that Sesterce tried to "deceive" Plaintiff by substituting Sesterce US, Inc., which it claims is "a non-operational U.S.-based subsidiary" (Compl. ¶ 87) is belied by the contractual record.

## III.   LEGAL ARGUMENT

### A.   Legal Standard for Rule 12(b)(6) and 12(f) Motions

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Dismissal under Federal Rule of Civil Procedure 12(b)(6) "is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks and citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In determining whether a plaintiff has met this standard, the Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable" to the plaintiff. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).

However, "[t]he court need not, and does not, accord an assumption of truthfulness to legal conclusions that are not supported by factual allegations in the Complaint or ***that are contradicted by documents referred to in the Complaint***." *Colony Cove Props., LLC v. City Of Carson*, 640 F.3d 948, 957 (9th Cir. 2011) (emphasis added); *see also Williams v. Resler*, 2018 WL 4063518, at *3 (S.D. Cal. Aug. 24, 2018) ("[W]hen a court in this circuit weighs contradictory exhibits against allegations in a complaint, a court may deviate from the presumed truthfulness of an allegation by exercising its reasoned judgment and 'drawing on its judicial experience and common sense.'") (*quoting Ashcroft, supra,* 556 U.S. at 679). Similar principles apply under California law in the state court setting, where courts accept as true facts appearing in the exhibits attached to the complaint, although if the facts in the exhibits contradict the facts in the complaint, the facts stated

in the exhibits take precedence. *Holland v. Morse Diesel Intern., Inc.* (2001) 86 Cal.App.4th 1443, 1446; *Mead v. Sanwa Bank California* (1998) 61 Cal.App.4th 561, 567-568.

Under FRCP 12(f), the Court "may order stricken from any pleading ... any redundant, immaterial, impertinent, or scandalous matter." "[A] motion to strike may be used to strike any part of the prayer for relief when the damages sought are not recoverable as a matter of law." *Bureerong v. Uvawas*, 922 F. Supp. 1450, 1479 n.34 (C.D. Cal. 1996).

**B.    Judicial Notice of the Docusign Certificates and the September 19 Agreement Is Proper Under Incorporation by Reference**

Although a court's review on a motion to dismiss is generally limited to the allegations in the complaint, the Court may properly "rel[y] on the doctrine of 'incorporation by reference' to consider documents that [are] referenced extensively in the complaint and [are] accepted by all parties as authentic." *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002) (*citing In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir.1999), superseded by statute on other grounds ("[The incorporation by reference] doctrine permits a district court to consider documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the plaintiff's pleading." The doctrine extends "to situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of the document in the complaint." *Knievel*, *supra,* 393 F.3d at 1076. Under this rule, "a court may look beyond the pleadings without converting the Rule 12(b)(6) motion into one for summary judgment." *Van Buskirk*, 284 F.3d at 980. "Where a court finds that a document has been incorporated by reference, the court 'may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6).'" *Chung v. Intellectsoft Grp. Corp.*, 2023 WL 5615456, at *2 (N.D. Cal. Aug. 30, 2023) (citing *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).).

In *Chung*, this Court held that invoices and their balance totals were incorporated by reference because the complaint relied on and referenced them extensively. Chung, at *2. Similarly, in *Kentwool Co. v. NetSuite Inc*, 2015 WL 693552, at *2 (N.D. Cal. Feb. 18, 2015), this Court

granted RJN in a similar case where the plaintiff selectively cited portions of multiple operative agreements. Here, as in *Kentwool*, Plaintiff's claim "depends on the contents of the agreement of which these documents were a part" because Plaintiff relies on the September 19 Agreement's longer contract term to calculate its damages. *Id*. "Consequently, these documents also fall within the scope of the incorporation by reference doctrine." *Id*. (*citing Knievel*, 393 F.3d at 1076.). *See also SDI Labs, Inc. v. Sameday Techs., Inc*. 2025 WL 1141165, at *4 (C.D. Cal. Mar. 24, 2025) (granting RJN of Docusign certificate and holding that the "incorporation-by-reference doctrine is intended to 'prevent[ ] plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims.'" (*citing Khoja*, 899 F.3d at 1002).)

Here, the Court should grant Defendants' RJN to incorporate the Docusign Certificate and the controlling September 19 Agreement. These documents provide the complete contractual record, exposing Plaintiff's selective omissions and misrepresentations about the contracting party, and confirm that dismissal is warranted as a matter of law.

## C.    Plaintiff's Breach of Contract Claim Fails Against the Named Defendants

### 1.    Sesterce France Are Not Parties to Any Agreement with Plaintiff

"A claim for breach of contract includes four elements: that a contract exists between the parties, that the plaintiff performed his contractual duties or was excused from nonperformance, that the defendant breached those contractual duties, and that plaintiff's damages were a result of the breach." *Boland, Inc. v. Rolf C. Hagen (USA) Corp*., 685 F. Supp. 2d 1094, 1101 (E.D. Cal. 2010). "Under California law, only a signatory to a contract may be liable for any breach." *Clemens v. Am. Warranty Corp*. (1987) 193 Cal. App. 3d 444, 452; *Sessions v. Chrysler Corporation* (9th Cir.1975) 517 F.2d 759, 760; *see also 19 Tao Vega LLC v. Holo Ltd*., 2019 WL 9607733, at *8 (N.D. Cal. Dec. 17, 2019) (dismissing contract claim without leave because party did not sign the agreement); St*. Vincent Med. Ctr. v. Mega Life & Health Ins. Co*., 585 F. App'x 417, 418 (9th Cir. 2014) (same but on summary judgment); *see also A*pplied Equip. Corp. v. Litton Saudi Arabia Ltd*., 7 Cal. 4th 503, 514 (1994) ("Contract law exists to enforce legally binding agreements between parties ...").

In *Sun Hong Foods, Inc. v. Future Best Trading Inc*., 2023 WL 11197084, at *3 (C.D. Cal.

Sept. 29, 2023), the district court dismissed breach of contract claims asserted against two defendants who were not signatories to the agreement at issue. Although the plaintiff attempted to plead liability against all three defendants, the court held that no claim could lie against the individuals and entities who had not themselves entered into the contract.  S*ee also Monster Film Ltd. v. Galloping Illusions Pty Ltd*., 2016 WL 10999320, at *4 (C.D. Cal. Sept. 23, 2016) (same).

Similarly in *Jones v. AIG Risk Mgmt., Inc*., 726 F. Supp. 2d 1049, 1054–55 (N.D. Cal. 2010), the district court found that under California law, only a party to a contract can be held liable for breach of contract or for breach of the implied covenant of good faith and fair dealing. In that case, the plaintiff brought claims for breach of contract and breach of the implied covenant of good faith and fair dealing against an insurer (National Union) and affiliated entities (AIG, Inc. and AIG Risk Management). *Id.* at 1054.  The affiliated entities were involved in handling claims and appeared on certain policy pages as trademarks or for copyright purposes but were not parties to the insurance policy. *Id.* The court held that non-signatories cannot be held liable absent circumstances showing they were parties to the contract. *Id.* The Court found that mere involvement in claim handling, administrative tasks, or appearing on policy pages does not make an entity a contracting party. *Id.* at 1055. The court dismissed claims for breach of contract and breach of the implied covenant against AIG, Inc. and AIG Risk Management, reaffirming the principle that only parties who sign or are clearly bound by the contract may be held liable. *Id.*

In *Shelton v. Ocwen Loan Servicing, LLC*, 2019 WL 4747669, at *15 (S.D. Cal. Sept. 30, 2019), the district court dismissed both a breach of contract and implied covenant claim against a trust defendant because that entity was not listed as the party to the contract nor were they a signatory.  In *Five Star Gourmet Foods, Inc. v. Fresh Express, Inc*., 2020 WL 513287, at *1 (N.D. Cal. Jan. 31, 2020), the district court dismissed a breach of contract claim against a non-signatory defendant. Plaintiffs alleged that Fresh Express should be liable because its employees, who individually signed NDAs, breached them in the course of their employment, arguing that Fresh Express was effectively a party through agency. The court rejected this argument, noting that the NDAs explicitly stated they were "personal" and "nonassignable," and identified the signatories as individuals—not Fresh Express.  *Id.*  And in *Sun v. Cheung*, 2025 WL 1446378, at *4 (E.D. Cal.

May 20, 2025), the district court addressed a breach of contract claim against a non-signatory, defendant Cheung, who signed an agreement solely as a representative of California Northstate University (CNU). The court held that Cheung could not be liable because the agreement identified only the plaintiff and CNU as parties, and a signature in a representative capacity does not create contractual obligations. *Id.* at *5. Emphasizing the principle that non-parties cannot be held liable for breach, the court granted summary judgment for Cheung, reinforcing that only expressly named parties may be bound under a contract. *Id.*

Here, as in all the cases cited above, the plain language of the September 18 and 19 Agreements confirms that Sesterce U.S., Inc. is the sole contracting party. Neither Sesterce France Labs SAS, Sesterce Group SAS, nor any other French entity is named in either agreement, nor did Plaintiff ever request that any French entity be added as a party. The Superseding September 19 Agreement, executed at Plaintiff's request to correct the contract term, unambiguously lists Sesterce U.S., Inc. as the "Customer," leaving no plausible argument that the named Defendants were parties or intended to be bound. Plaintiff's reliance on selective provisions from the September 18 Agreement while ignoring the superseding September 19 Agreement demonstrates an attempt to manufacture liability against the wrong entities. The complete contractual record—including the Docusign certificate confirming the sequence and integrity of execution—shows that Sesterce U.S., Inc. executed the Agreements, Plaintiff executed them knowingly, and no alterations occurred thereafter. The Complaint fails to establish that the named Defendants are contracting parties. Consequently, the breach of contract claim against them fails as a matter of law.

Plaintiff may argue that Defendants can be bound under the Agreements as beneficiaries or intended beneficiaries. However, "a contract cannot bind a nonparty, whether the nonparty is an intended beneficiary or not." *F.B.T. Prods., LLC v. Aftermath Records*, 827 F. Supp. 2d 1092, 1104 (C.D. Cal. 2011) (*citing EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002) ("It goes without saying that a contract cannot bind a nonparty.")). In *F.B.T.*, the district court held that plaintiffs were not a party to or a signatory on two different agreements being sued under and therefore, could not be bound by the provisions in either. *Id.* This was despite reference to plaintiffs in both agreements. *Id.* Here, the named Defendants never signed the Agreements and Sesterce US had no authority to

bind any other entity. Plaintiff's theory that Defendants somehow are liable through Hydra's negotiation, administrative acts, or agency is foreclosed by the Agreements themselves, which clearly identify the signatory parties and show that Hydra acted solely as a broker. Plaintiff cannot avoid this fundamental principle by alleging that Defendants are beneficiaries or asserting a purported superimposition of Sesterce U.S., Inc. over the original draft.

In short, the law is clear and the facts undisputed: only the parties who actually signed the Agreements—Sesterce U.S., Inc. and Plaintiff—can be held liable. The named French entities never signed, were never requested to be added, and cannot be bound as beneficiaries. Any attempt to hold them responsible is legally untenable and should be dismissed with prejudice.

### 2.      The Court Lacks Personal Jurisdiction Over Sesterce France

Further, in the absence of evidence showing that Sesterce France having entered into an agreement with Together, this Court lacks personal jurisdiction over Sesterce France. Sesterce France are incorporated and headquartered in France with no physical presence whatsoever in California. There is therefore no general jurisdiction over Sesterce France. And because Sesterce France did not enter into an agreement with Together, there is no specific jurisdiction over Sesterce France. When a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate. *Schwarzenegger v. Fred Martin Motor Co*., 374 F.3d 797, 800 (9th Cir. 2004). A plaintiff cannot simply rest on the bare allegations of its complaint but rather is obligated to come forward with admissible evidence supporting personal jurisdiction. *Amba Marketing Sys., Inc. v. Jobar Int'l, Inc*., 551 F.2d 784, 787 (9th Cir. 1977). Here, Plaintiff has failed to provide sufficient evidence that Sesterce France entered into the September 18 Agreement and has omitted key facts and evidence demonstrating that Sesterce US was the contracting party, not Sesterce France. The Court therefore lacks personal jurisdiction over Defendants and dismissal under Rule 12(b)(2) is appropriate.

### D.      Plaintiff's Breach of the Implied Covenant of Good Faith and Fair Dealing Claim Fails Against the Named Defendants

As demonstrated above, Together cannot show that an enforceable contract exists with the named Defendants, and therefore its claim for breach of the implied covenant of good faith and fair

dealing also fails. Moreover, because this implied covenant claim merely duplicates the breach of contract claim, it is independently barred.

"The implied covenant of good faith and fair dealing rests upon the existence of some specific contractual obligation." *Racine & Laramie, Ltd. v. Dep't of Parks & Recreation*, 11 Cal. App. 4th 1026, 1031 (1992), reh'g denied and opinion modified (Jan. 6, 1993), as modified on denial of reh'g (Mar. 25, 1993) (*citing Foley v. Interactive Data Corp*., 47 Cal. 3d 654, 683-684 (1988); *see also Avidity Partners LLC v. State of California*, 221 Cal. App. 4th 1180, 1204 (2013). Such a claim is intended to supplement "the express contractual covenants, to prevent a contracting party from engaging in conduct which (while not technically transgressing the express covenants) frustrates the other party's rights to the benefits of the contract." *Love v. Fire Ins. Exch*., 221 Cal. App. 3d 1136, 1153 (1990); *see also Avidity Partners LLC*, 221 Cal. App. 4th at 1204. Nonetheless, "[t]he implied covenant of good faith and fair dealing does not impose substantive terms and conditions beyond those to which the parties actually agreed." *Id.* (*citing Guz v. Bechtel National Inc*., 24 Cal.4th 317, 349 (2000).) In *Ledet v. California Waste Sols., Inc*., 2013 WL 1120786, at *6 (N.D. Cal. Mar. 18, 2013), the district court dismissed a breach of the implied covenant cause of action against a defendant because he was not a party to the agreement. *See Rosal v. First Fed. Bank of Cal*., 671 F. Supp. 2d 1111, 1129 (N.D. Cal. 2009) ("To establish a breach of an implied covenant of good faith and fair dealing, a plaintiff must establish the existence of a contractual obligation, along with conduct that frustrates the other party's rights to benefit from the contract.") (*citing Racine & Laramie, Ltd. v. Dep't of Parks & Rec.*, 11 Cal. App. 4th 1026, 1031 (1992).)

As established above, the named Defendants—Sesterce France Labs SAS, Sesterce Group SAS, and any other French entities—are not parties to either the September 18 or September 19 Agreements. Because they did not execute the contracts, they cannot be bound by any of the contractual obligations set forth therein. The law is clear: a claim for breach of the implied covenant of good faith and fair dealing presupposes the existence of a contractual relationship. Without a contract, there can be no enforceable implied covenant claim. Here, since the Agreements unambiguously identify only Sesterce U.S., Inc. as the contracting party, the named Defendants cannot be held liable for any alleged breach, and the implied covenant claim is therefore duplicative

of, and fails alongside, the breach of contract claim. In short, because no contractual duties exist between Plaintiff and the named Defendants, both the breach of contract and implied covenant claims must be dismissed as a matter of law.

Moreover, Plaintiff's allegations in support of its implied covenant claim mirror its breach of contract allegations and do not identify any separate or independent harm. The purported bad-faith conduct—Sesterce's alleged pretextual interpretation of the Contract, failure to disclose agreements with Mistral, and purported misrepresentations regarding end users—relates entirely to the same non-payment and contractual obligations that form the basis of the breach of contract claim. Under California law, the implied covenant of good faith and fair dealing cannot impose duties beyond those already contained in the express contract and is intended only to prevent conduct that frustrates the agreed-upon contractual benefits. *Racine & Laramie, Ltd*., *supra*, 11 Cal. App. 4th at 1031; *Avidity Partners LLC*, *supra,* 221 Cal. App. 4th 1180 at 1204. Because Plaintiff seeks the same relief—payment under the Contract—and does not allege independent damages, the claim is duplicative and fails as a matter of law. *See also Gabrielli v. Motorola Mobility LLC*, 2025 WL 1939957, at *13 (N.D. Cal. July 14, 2025), in which this Court granted a motion to dismiss an implied covenant claim based on it being duplicative of the breach of contract claim.

### E.    Leave to Amend Should Be Denied

When dismissing a complaint, leave to amend must be granted unless it is clear that the complaint's deficiencies cannot be cured by amendment. *Lucas v. Dep't of Corrections*, 66 F.3d 245, 248 (9th Cir.1995); *see also Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013) ("Although a district court should grant the plaintiff leave to amend if the complaint can possibly be cured by additional factual allegations, [d]ismissal without leave to amend is proper if it is clear that the complaint could not be saved by amendment."). In *Sun Hong Foods, Inc*., *supra,* 2023 WL 11197084, at *3, the district court declined to grant leave to amend where the plaintiff attempted to hold defendants liable for breach of contract despite the fact that those defendants were not parties to the agreement. The court reasoned that because the contract itself established the actual parties, no amendment could cure the defect of suing non-signatories. *See also Lyman v. Saxon Mortg. Servs., Inc*., 2013 WL 12173600, at *2 (N.D. Cal. May 30, 2013) (same). The same principle applies

1  here. Plaintiff has sued two Sesterce entities that, on the face of the operative agreements, were

2  never the contracting party. As in the cases above, the defect is not a matter of pleading technicalities

3  but one of substance: Plaintiff cannot transform non-parties into contracting parties through creative

4  allegations. Therefore, dismissal here should be without leave to amend.

5          **F.      Plaintiff Is Not Entitled to Punitive Damages or Prevailing Attorney's Fees**

6          Plaintiff cannot recover punitive damages because such damages are not available on

7  contract actions under California law. *City of Hope Nat'l Med. Ctr. v. Genentech, Inc.* (2008) 43

8  Cal. 4th 375, 392 ("punitive damages may not be awarded for breach of contract"); *Spinks v. Equity*

9  *Residential Briarwood Apartments* (2009) 171 Cal. App. 4th 1004, 1054 ("Since a party may not

10 recover in tort for ... breach of the implied covenant of good faith and fair dealing, an award of

11 punitive damages is not permitted on such a claim"); *Goel v. Coalition Am. Holding Co. Inc*., WL

12 13128300, at *9 (C.D. Cal. 2011) (same); *In re Yahoo! Inc. Customer Data Sec. Breach Litig*., 313

13 F. Supp. 3d 1113, 1149 (N.D. Cal. 2018) (same); *Beluca Ventures LLC v. Einride Aktiebolag*, 2022

14 WL 17252589, at *5 (N.D. Cal. 2022) (punitive damages not available in contract, quasi-contract

15 or for breach of implied covenant except in the limited context of insurance bad faith).

16         Nor can Plaintiff recover its attorney's fees in this action.  Courts customarily follow the

17 "American rule," which does not allow the recovery of attorney's fees unless specified by statute.

18 *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 245 (1975). Federal courts apply state

19 law when determining breach of contract claims and attorney's fees. *Matter of Sparkman*, 703 F.2d

20 1097, 1099 (9th Cir. 1983).  California law dictates, "in the absence of a special statute or a

21 contractual provision for attorney's fees, the prevailing party is not entitled to recover attorney's fees

22 from his opponent." *Olson v. Arnett* (1980) 113 Cal. App. 3d 59, 67. Plaintiff has not pointed to a

23 contractual provision allowing it to recover attorney's fees and costs expended in enforcing the

24 contract, and it cites no authority permitting such recovery as damages for a breach of contract claim.

25 Accordingly, Plaintiff cannot seek those damages for an alleged breach of contract.

26 / / /

27 / / /

28 / / /

IV.     **CONCLUSION**

Defendants are not parties to the Agreements and cannot be liable for obligations they never assumed.  Accordingly, Defendants respectfully request that the Court grant this Motion to Dismiss.

Dated: October 6, 2025                    TURNER HENNINGSEN WOLF & VANDENBURG, LLP


By:  /s/ Matthew C. Wolf
          Matthew C. Wolf

Attorneys for Defendants
SESTERCE FRANCE LABS SAS, and SESTERCE
GROUP SAS

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT